J-S15031-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DENNIS JONES | : | |
| | : | |
| Appellant | : | No. 2297 EDA 2025 |

Appeal from the Judgment of Sentence Entered October 28, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007425-2022

BEFORE: OLSON, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED MAY 15, 2026**

Appellant, Dennis Jones, appeals *nunc pro tunc* from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County following his guilty plea to the charges of third-degree murder, firearms not to be carried without a license, carrying firearms in public in Philadelphia, and possessing an instrument of crime.[1] After our careful review, we affirm.

The relevant facts and procedural history are as follows: On October 20, 2022, the Commonwealth filed an Information charging Appellant with various crimes in connection with the October 27, 2020, shooting death of the victim,

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(c), 6106(a)(1), 6108, and 907(a), respectively.

J-S15031-26

Keshone Young. On August 12, 2024, Appellant, represented by counsel, entered a guilty plea to the charges *supra*.

During the guilty plea hearing, the Commonwealth stated Appellant would be entering an "open guilty plea with a cap." N.T., 8/12/24, at 4. Specifically, the Commonwealth indicated that, in exchange for Appellant's guilty plea to the four charges *supra*, "the Commonwealth would agree to a cap of 21 to 42 years." *Id.* The Commonwealth further noted Appellant agreed to pay restitution. *Id.* Appellant acknowledged his understanding of the sentencing agreement and confirmed no other promises had been made to him. *Id.* at 11.

The trial court indicated it was aware of the sentencing agreement whereby Appellant's aggregate sentence would be no more than 21 to 42 years in prison. *Id.* The trial court indicated that, with respect to fashioning a specific sentence, the trial court would consider the aggravating and mitigating factors. *Id.*

The trial court colloqued Appellant as to the rights he was waiving by pleading guilty. *Id.* at 8-12. The Commonwealth then set forth on the record the details of the crimes, including that Appellant shot Mr. Young as he stood outside of a store. *Id.* at 14. After the trial court accepted Appellant's guilty plea, the trial court ordered a pre-sentence investigation report. *Id.* at 17.

On October 28, 2024, Appellant, along with his counsel, proceeded to a sentencing hearing. The trial court specifically stated that it received and

reviewed the pre-sentence investigation report, as well as numerous letters sent by Appellant's family members in support of Appellant. N.T., 10/28/24, at 3. Further, a corrections officer drafted a "brief paragraph" on Appellant's behalf, and Appellant's counsel provided it to the trial court. *Id.* at 4. The trial court acknowledged the applicable sentencing guidelines. *Id.*

Appellant's counsel informed the trial court that Appellant takes responsibility for his crimes, and "emotions are running very high." *Id.* at 5. Appellant understands he "can't take back the life" he took, but he has a lot of support. *Id.* Appellant's counsel reminded the trial court that, aside from "one prior gun case back in 2014," Appellant has no other prior criminal cases, and Appellant has been gainfully employed. *Id.* He noted that Appellant's motive for shooting Mr. Young revolved around an alleged episode where Mr. Young robbed Appellant's cousin, who allegedly sold marijuana. *Id.* at 6. Appellant alleged that, during this armed robbery, Mr. Young threatened to shoot Appellant and his cousin if they later "came for him." *Id.* Appellant's counsel explained that, on the day of the shooting, Appellant saw Mr. Young by happenstance in the store, and after he exchanged words with Mr. Young, Appellant shot him. *Id.* at 7.

Based on Appellant's alleged motive, Appellant's counsel asked the trial court to consider that Appellant is not "gangbanging and trying to rob people or doing all these things." *Id.* at 8. He was working and "had his life together" at the time of the shooting. *Id.* However, Appellant's counsel acknowledged

that Appellant made a horrible decision when he shot Mr. Young. *Id.* Appellant's counsel requested the trial court "stay in the guidelines, the lower end of the guidelines for the minimum." *Id.* He stated he understood "the maximum could be up to 40 for the third degree;" however, he asked the trial court to consider that Appellant has a lot of people who will "help him stay on track" after he leaves prison. *Id.*

At this point, Appellant's cousin, Allen Stevenson, testified in support of Appellant. *Id.* at 9. He informed the trial court that he believes Appellant shot Mr. Young because he was "in fear for his life." *Id.* at 10. He asked the trial court to consider that Appellant has four children, and he is a "good person." *Id.*

The Commonwealth advised the trial court that it agreed with the trial court's understanding of the applicable sentencing guidelines. *Id.* at 11. The Commonwealth requested an aggregate sentence of 21 years to 42 years in prison, as well as restitution in the amount of $8,423.50. *Id.* The Commonwealth argued that, contrary to Appellant's position, Appellant's motive for the murder was "payback" for the robbery. *Id.* at 12. For example, the Commonwealth noted the video evidence revealed Appellant walked "way down the street, looked back, and then shot [Mr. Young] in the back of the head." *Id.* "[Appellant] walked past him a second time and then turned around and shot him in the back again." *Id.*

The Commonwealth averred the shooting of Mr. Young was an "execution," and Appellant calls himself "The Anonymous Killer" on Instagram. *Id.* at 14. The Commonwealth averred that it was willing and able to try Appellant on a charge of first-degree murder; however, since Appellant agreed to plead guilty, the Commonwealth reduced the homicide to third-degree murder. *Id.* at 13. The Commonwealth indicated that, based on the video, there is no evidence of self-defense, and it "was a vicious shooting." *Id.* at 17. Moreover, the Commonwealth averred that, after the shooting, Appellant "went down to Georgia away from his family," thus suggesting that family support is not that important to Appellant. *Id.* at 13.

The Commonwealth provided the trial court with a few victim impact statements. The Commonwealth read into evidence the victim impact statement of Nickole Ross, who is Mr. Young's Godmother. *Id.* at 17. She explained the pain Mr. Young's family has felt because of the death of Mr. Young. *Id.* at 18. She described Mr. Young as "a loving soul with a beautiful smile that would brighten the day." *Id.* Ms. Ross opined Appellant "needs to spend the rest of his life in prison for his crime…and be held accountable for his actions." *Id.*

Monta Young, who is Mr. Young's father, testified the death of his son has "broken" members of his family, as well as Appellant's own family. *Id.* at 20, 22. He indicated he had a close bond with his son. *Id.* at 20. He described the horror of learning that his son had been killed. *Id.* at 20-21. He described

his son as "dependable" and "sweet." *Id.* at 22. He testified that the killing of his son was not in self-defense, and he will not allow Appellant to "put any dirt on" his son's name. *Id.* at 23.

Nastosha Young, who is Mr. Young's aunt, testified Mr. Young was a "profound presence in [her] life." *Id.* at 24. She shared a "deep and meaningful" bond with him, and "his absence has left a significant void in [the family's] hearts." *Id.* She testified Mr. Young was full of "laughter and love," as well as "kindness and ambition." *Id.* at 25. She explained that Mr. Young was "a good role model," and although he was not perfect, Mr. Young "deserved better" than being shot on the street. *Id.* Ms. Young noted that Mr. Young was only twenty-four years old when he was killed, he was about to start his career as an electrician, and he is never "going to have a child" because of his death. *Id.* at 26.

Lakesha Saunders, who is the mother of Mr. Young, testified he was her "heartbeat," "sunshine," and an "amazing person." *Id.* at 28. She indicated he had a great sense of humor, and he loved his family. *Id.* She explained the pain she felt when she learned Mr. Young had been shot. *Id.* at 29. After his death, she felt "heartbroken, angry, and traumatized." *Id.* Although it has been four years since Mr. Young's murder, she still experiences "panic attacks" and unbearable pain. *Id.* She noted that she has been deprived of seeing Mr. Young get married and raise children; she indicated that a mother should never have to bury her child. *Id.* at 30. She explained that two of her

children are in counseling because of Mr. Young's death, and she requested her son's death not be in vain. *Id.*

Kim Young, who is the paternal grandmother of Mr. Young, testified that Mr. Young enjoyed her cooking, and she enjoyed his smile. *Id.* at 32. She testified he held her hand when they walked to the store, and her "world is gone." *Id.* She asked the trial court for "justice" and noted she "prays for peace." *Id.* at 33.

Appellant made a statement to the trial court. He apologized to Mr. Young's family and indicated "words can't express how deeply sorry [he is] for [his] actions." *Id.* at 34. He indicated he wished he had been in a different place on the night of the shooting. *Id.* at 35. Appellant stated to the court, "I don't know if this is appropriate, but you have the power and the ability to take my life, and I just pray you show mercy on the facts of the case." *Id.* Appellant indicated he understood that taking a life is a serious crime and hoped for a second chance. *Id.* He apologized again to Mr. Young's family, and he also apologized to his family for the embarrassment and pain he caused. *Id.*

After receiving all testimony and evidence during the sentencing hearing, the trial court stated the following in open court:

> THE COURT: I wish there was a sentence I could hand down that would rewind this back to, you know, watching that video and just seeing you leave. Right? You left. And I sit there thinking to myself, please, just don't go back, don't go back. And that's not what happened.

I know you did go back, and I know what I saw, which was really cold, really calculated, and quite honestly, like, you're not the judge, jury, and executioner, and you don't get to take a life. And for you to sit here now, today, talking about "I have your life in my hands?" Please, give me a break. You had your own life in your hands, and you had Mr. Young's life in your hands. I have no lives in my hands. I have the law in my hands. And that's it. I don't have life in my hands.

This is not a death sentence. Right? You are going to get out of prison. You are going to go on to—something that Ms. Young said to me today that just—I wrote it down because it's so powerful. I'm never going to see how his life would have turned out. They will get to see your life, and how it turns out. And that is something you took from them. You took it. I didn't.

So, I don't have your life in my hands. I don't. You, on October 27, 2020, you had your life in your hands, and you messed it up and you ruined theirs. Right? And you ruined your children's lives. The time for you to think about who's life is in whose hands was then, not today. Because all you can do—and I appreciate it, and I'm going to take into account that you accepted responsibility and the fact that you express remorse, but please, this job is hard enough without people who do atrocious things, putting the burden on me to have your life—I don't have your life in my hands. If I did, I would have smacked it out of you---whatever was going on in your head—on October 27, 2020.

Today, it's on you. Your life is in your hands, and you will get out of prison, and you will go on to see what the next chapter of your life looks like. And I wish for you nothing but good things to make this—so this isn't completely in vain. Right? So that you don't screw up the rest of your life, screw up your kids' lives. You can be a father to them. You can still be a good dad. It's going to take a different shape, but you're still going to get to do that when he's not going to get that chance because you executed him.

And, they're right. This is not—self-defense--and fear for your life does not mean that I'm going to get you before you get me. That's not what this is. And I refuse—I'm living in this city. I've been born and raised here. Never left. Went to school here, everything, and I refuse to allow that kind of behavior that you exhibited that night to be our norm. It's not normal. Despite where we're at. Right? It's not normal, and it's not okay.

The fact you took off—you knew what you did was wrong. You ran for years. We didn't get you back for years later.

Right?...You knew what you did was wrong. It wasn't justifiable. It wasn't even close, quite honestly[.]

I understand this case has a cap; is that right? That 21 to 42 is the cap?

[ADA]: Correct.

THE COURT: I'm going to sentence you to 17 and a half to 35 on the murder. I'm going to sentence you—because you had a prior gun case, and you knew you weren't supposed to carry a firearm. You were told not to carry a firearm. You were told what this was going to look like, and you, you know, took your own path.

So—and the guidelines in that are 18 to 30 months. And it's the sentence of the Court that you serve 30 months to 60 months on that consecutive for a total sentence of 20 to 40 [years in prison]. And no further penalty on the other two. So, your total sentence is 20 to 40 [years in prison].

\*\*\*

Before you go, I want to make sure I go on the record to say the following things as well. I've taken into consideration the enormous support that you have in the letters that were written that I read—each one of them. They were beautifully written, and they said a lot of good things on your behalf. I'm taking into consideration that you finally accepted a guilty plea at the last minute, and I'm taking into consideration your remorse.

But, on the other side, the profound impact that your actions had on society, on Mr. Young, on his family, sort of, balance out, and that's why the sentence is where it is.

*Id.* at 35-40.

Accordingly, at the conclusion of the sentencing hearing, in accordance with the parties' plea agreement, the trial court imposed an aggregate sentence of twenty years to forty years in prison, as well as imposed restitution. Appellant was provided with his post-sentence and appellate rights. Thereafter, on November 7, 2024, Appellant filed a timely, counseled motion for reconsideration of his sentence.

By order entered on March 6, 2025, the motion was denied by operation of law. Appellant did not file a timely direct appeal; however, with the assistance of new counsel, he filed a timely PCRA[2] petition seeking the restoration of his direct appeal rights *nunc pro tunc*. On August 27, 2025, the PCRA court granted the petition and reinstated Appellant's appeal rights. This counseled appeal followed on August 28, 2025. All Pa.R.A.P. 1925 requirements have been adequately met.

On appeal, Appellant sets forth the following sole issue in his "Statement of the Question Involved" (verbatim):

> I. Did the trial court abuse its discretion in sentencing Appellant to a manifestly excessive sentence of 20 to 40 years of imprisonment where the court imposed consecutive sentences for each crime and disregarded substantial evidence that would have supported the imposition of a mitigated sentence without placed reasons on the record in support of its above-guideline sentence?

Appellant's Brief at 4 (unnecessary capitalization omitted).

On appeal, Appellant contends the trial court abused its discretion in imposing sentences above the standard range of the Sentencing Guidelines and ordering the sentences to run consecutively without adequately considering the mitigating factors and failing to state adequate reasons for the sentence on the record. Appellant specifically suggests the trial court placed too much emphasis on the impact of Appellant's crimes on Mr. Young's family and the community while ignoring the substantial evidence establishing

---

[2] Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9545.

Appellant is a hard-working family man with a lack of a significant criminal history.

Appellant's issue presents a challenge to the discretionary aspects of his sentence. Given that he entered a guilty plea pursuant to a plea agreement, we must initially determine whether Appellant may challenge the discretionary aspects of his sentence. This determination "depends upon the actual terms of the plea bargain, specifically, to what degree a sentence agreement has been reached." *Commonwealth v. Dalberto*, 648 A.2d 16, 18 (Pa.Super. 1994).

A defendant may enter an open or a negotiated guilty plea. An open guilty plea "is one in which there is no negotiated sentence." *Commonwealth v. Tirado*, 870 A.2d 362, 363 n.1 (Pa.Super. 2005). In other words, if "there have been no sentencing restrictions in a plea agreement, the entry of a guilty plea will not preclude a challenge to the discretionary aspects of sentencing." *Dalberto*, 648 A.2d at 20. However, if a plea agreement involves an agreement to a particular penalty, "there is no authority to permit a challenge to" the imposition of that penalty. *Id.* (citation omitted).

There are also "hybrid" plea agreements, which "fall[ ] somewhere between a negotiated plea and an open plea[.]" *Id.* at 21. When faced with these agreements, "our task is to determine the effect of th[e] hybrid plea agreement on the right to challenge the discretionary aspects of [the] sentence." *Id.* "A hybrid plea agreement does not preclude appellate review

of those discretionary aspects of the sentence that were not agreed upon in the negotiation process." ***Commonwealth v. Heaster***, 171 A.3d 268, 271 (Pa.Super. 2017).

Here, Appellant and the Commonwealth agreed that the aggregate sentence would be no more than 21 to 42 years in prison. The parties agreed to give the court discretion to impose an aggregate sentence anywhere below the cap, and, thus, Appellant may challenge on appeal the court's exercise of that discretion. ***See id.*** Accordingly, we turn to a review of Appellant's discretionary aspect of sentencing claim.

"[C]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." ***Commonwealth v. Derry***, 150 A.3d 987, 991 (Pa.Super. 2016) (citation omitted). Rather, before reaching the merits of such claims, we must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issues; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the sentencing code.

***Commonwealth v. Corley***, 31 A.3d 293, 296 (Pa.Super. 2011) (citation omitted). Here, assuming, *arguendo*, all of these requirements have been met, we conclude Appellant's sentencing issue is meritless.

Our standard of review concerning the discretionary aspects of sentencing is as follows:

- 12 -

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Hyland*, 875 A.2d 1175, 1184 (Pa.Super. 2005).

42 Pa.C.S.A. § 9721(b) offers the following guidance to the trial court's

sentencing determination:

[T]he sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

42 Pa.C.S.A. § 9721(b).

Furthermore,

Section 9781(c) specifically defines three instances in which the appellate courts should vacate a sentence and remand: (1) the sentencing court applied the guidelines erroneously; (2) the sentence falls within the guidelines, but is "clearly unreasonable" based on the circumstances of the case; and (3) the sentence falls outside of the guidelines and is "unreasonable." 42 Pa.C.S.A. § 9781(c). Under 42 Pa.C.S.A. § 9781(d), the appellate courts must review the record and consider the nature and circumstances of the offense, the sentencing court's observations of the defendant, the findings that formed the basis of the sentence, and the sentencing guidelines. The weighing of factors under 42 Pa.C.S.A. § 9721(b) is exclusively for the sentencing court, and an appellate court may not substitute its own weighing of those factors. The primary consideration, therefore, is whether the court imposed an individualized sentence, and whether the sentence was nonetheless unreasonable for sentences falling outside the guidelines, or clearly unreasonable for sentences falling within the guidelines, pursuant to 42 Pa.C.S.A. § 9781(c).

*Commonwealth v. Bricker*, 41 A.3d 872, 875-76 (Pa.Super. 2012) (citations

omitted).

> When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation. Where pre-sentence reports exist, we shall…presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.

***Commonwealth v. Antidormi***, 84 A.3d 736, 761 (Pa.Super. 2014)

(quotation marks and quotation omitted).

In the case *sub judice*, the trial court relevantly indicated the following:

> In the present case, Appellant had a prior record score of one, and the third-degree murder has an offense gravity score of 14. N.T., 10/28/24, at 3-4. The parties agreed that the applicable sentencing guidelines were 102 months to the statutory limit. N.T., 10/28/24, at 4. Based upon these guidelines, the court chose to sentence Appellant to 210-420 months, which is a guideline sentence well under the statutory maximum. On the VUFA § 6106 conviction, the court could have sentenced up to 42-84 months, yet it chose to sentence Appellant to 30-60 months consecutive to the third-degree murder sentence. [The trial court imposed no further sentence on the remaining convictions.] Based on the discretion afforded to the sentencing court, the court reasonably chose to sentence Appellant to an aggregate sentence of twenty to forty years of incarceration, an entirely within guideline sentence.

> Appellant argues that the court failed to properly consider all of Appellant's mitigating circumstances and rehabilitative needs. However, it is presumed that the [trial] court adequately considered mitigating factors that were presented to it because the court received and reviewed Appellant's pre-sentence investigation report. ***Commonwealth v. Boyer***, 856 A.2d 149, 154 (Pa.Super. 2004) ("[W]here the sentencing judge had the benefit of a pre-sentence investigation report, it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors."). Additionally, a sentencing

judge can satisfy the statutory requirement that it state its reasons for the sentence on the record, 42 Pa.C.S.A. § 9721(b), "by indicating that he or she has been informed by the pre-sentencing report; thus, properly considering and weighing all relevant factors." *Boyer*, 856 A.2d at 154[.]

Here, the court clearly stated the reasons for its sentence on the record. The court acknowledged that Appellant accepted responsibility and expressed remorse. N.T., 10/28/24, at 37. The court also acknowledged that Appellant had enormous support from his community. *Id.* at 40. However, the court stated that these mitigating circumstances were entirely balanced out by the aggravating circumstances. *Id.* Appellant committed a "cold, [and] really calculated" murder, and as a result, Mr. Young's mother will "never [get] to see how [her son's] life would have turned out." *Id.* at 36. In balancing the facts of Mr. Young's death against Appellant's proffered mitigation evidence, the court reasonably sentenced Appellant to a guideline sentence.

Trial Court Opinion, filed 10/8/25, at 7-9.

We find no abuse of discretion. Here, when imposing its sentence, the trial court considered Appellant's rehabilitative needs, as well as the gravity of the offense and the need to protect the community. It considered the testimony and arguments from the sentencing hearing, as well as information in the pre-sentence investigation report and mitigation evidence. Further, we note "Pennsylvania law affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentence already imposed." *See Commonwealth v. Prisk*, 13 A.3d 526, 533 (Pa.Super. 2011). Contrary to Appellant's suggestion, the trial court adequately stated on the record the reasons for Appellant's individual sentences, as well as the reasons for imposing sentences consecutively. *See Commonwealth v. Anderson*, 830 A.2d 1013 (Pa.Super.

2003) (holding that, as long as the trial court's stated reasons for sentence on the record demonstrates it weighed Sentencing Guidelines with facts of crime and the defendant's character in meaningful fashion, the sentence should not be disturbed). Here, there is nothing in the record to suggest the court abused its discretion in imposing its sentence, which was in accordance with the parties' plea agreement.

For all of the foregoing reasons, we affirm.

Judgment affirmed.

Judge Murray joins this memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/15/2026